ORIGINAL

FILED
U.S. DISTRICT COURT

2009 SEP 18 PM 12:00

CLERK L. Flanders
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| NOEL MENDOZA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 108-125 |
| | ) | (Formerly CR 106-009) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Noel Mendoza, an inmate currently incarcerated at the Federal Correctional Institution in Coleman, Florida, has filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the following reasons, the Court **REPORTS** and **RECOMMENDS** that Petitioner's § 2255 motion be **DENIED** without an evidentiary hearing, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

### I. BACKGROUND

On January 11, 2006, a federal grand jury indicted Petitioner, his wife (Yvonne Mendoza), and a male accomplice (Arnulfo Gopar) on the following charges: (1) one count of conspiracy to distribute cocaine hydrochloride, in violation of 21 U.S.C. § 846 (count 1 of the indictment); and (2) two counts of distribution of over 500 kilograms of cocaine hydrochloride, in violation of 21 U.S.C. § 841(a)(1) (counts 2 and 3 of the indictment). See

United States v. Mendoza, CR 106-009, doc. no. 1 (S.D. Ga. Jan. 11, 2006) (hereinafter "CR 106-009"). Richard T. Pacheco, II, was appointed to represent Petitioner, and pursuant to a negotiated plea agreement, Petitioner pled guilty to count 3 of the indictment. CR 106-009, doc. nos. 38, 39. The plea agreement contained an express appeal waiver, wherein Petitioner agreed to give up his rights to direct appeal and collateral attack of his conviction and sentence, as follows:

> The defendant, as a part of this agreement . . . expressly waives any and all rights to collateral post-conviction attack of the sentence imposed or the voluntariness, providence, or factual basis of the guilty plea entered pursuant to this agreement.
>
> Notwithstanding these waivers, the defendant reserves the right to file a direct appeal (but not a collateral attack) of the sentence imposed (but not the voluntariness, providence, or factual basis of the defendant's entry of a guilty plea pursuant to this agreement), in the event the sentencing Court upwardly departs from the guideline range . . . .

Id., doc. no. 39, pp. 5-6.

At the Rule 11 colloquy, Petitioner informed the Honorable Dudley H. Bowen, Jr., United States District Judge, that he had been afforded enough time to discuss and prepare his case with his attorney. Id., doc. no. 79, p. 12 (hereinafter "Rule 11 Tr."). While Petitioner initially stated that Mr. Pacheco had met with him only once, he later retracted that statement, after Mr. Pacheco stated that he had actually been to visit him twice. Id. at 13-15. Furthermore, counsel for the government stated that he had as much contact with Mr. Pacheco as with other defense counsel involved in the case. Id. at 16. Based on his inquiry, Judge Bowen found that Mr. Pacheco's representation of Petitioner met "the requirements of effective assistance of counsel." Id. at 17-18.

2

Following this inquiry, the Court heard the testimony of FBI Special Agent Brian Ozden, which provided the factual basis for Petitioner's guilty plea. Though Petitioner initially objected to Special Agent Ozden's testimony on the grounds that he was never in actual possession of the drugs seized, he later acknowledged that the drugs were found in his vehicle and that he was involved in the drug transaction leading to his arrest. Id. at 43-44. Specifically, Petitioner informed Judge Bowen that an unspecified individual contacted him asking him how to contact Mr. Gopar. Id. at 54. Petitioner later contacted Mr. Gopar and rode with him to deliver the drugs. Id. Petitioner further stated that Mr. Gopar paid him $500.00 to be his interpreter. Id. While Petitioner adamantly maintained that he did not own, buy, or sell the drugs, he did admit that he facilitated the transaction leading to his arrest. Id.

Judge Bowen went on to summarize the plea agreement to ensure that Petitioner understood it. As the following excerpt demonstrates, Judge Bowen questioned Petitioner about the appeal waiver contained in the plea agreement.

> Q: Do you understand that under your plea agreement that if I sentence you within your guideline range that you are giving up your right to appeal from that sentence or to contest the fact of your conviction?
>
> A: Yes.

Id. at 55. Judge Bowen also explained the appeal waiver to Petitioner's co-defendant, Mr. Gopar, and Petitioner indicated that he heard Judge Bowen's explanation and understood that he was giving up the same rights as Mr. Gopar. Id. at 37-38, 55. While noting some initial equivocation on Petitioner's part, Judge Bowen ultimately found that Petitioner had admitted his guilt, for which there was an "ample and sound" factual basis, and had elected to plead

3

guilty with the advice of his attorney. Id. at 57. Accordingly, Judge Bowen accepted Petitioner's guilty plea, which was duly entered. Id., doc. no. 42. Petitioner was later sentenced to 120 months of imprisonment and 5 years of supervised release; Judge Bowen also imposed a $100.00 special assessment and a fine of $15,000.00. Id., doc. no. 55.

Following an unsuccessful appeal, see United States v. Mendoza, 252 Fed. App'x 265 (11th Cir. 2007) (*per curiam*), Petitioner timely filed the instant § 2255 motion, in which he seeks to have his conviction and sentence vacated based on the following allegations:

(1) his guilty plea was not knowing and voluntary because of a language barrier and medication he was taking;

(2) counsel was ineffective for:

(a) failing to provide an interpreter,

(b) not requesting a mental health evaluation, which

(i) affected his ability to understand the nature and consequences of his situation, and

(ii) resulted in a longer prison sentence;

(c) leaving a copy of the Pre-Sentence Investigation ("PSI") with Petitioner, which led him to share it with another inmate who forged a threatening letter, thereby resulting in a sentence enhancement for obstruction of justice, and

(d) failing to present mitigating evidence regarding Petitioner's mental health at sentencing; and

(3) his sentence is unreasonable under 18 U.S.C. § 3553(a).

(See doc. no. 1, pp. 4-6; doc. no. 4, pp. 1-2). Petitioner has also requested an evidentiary hearing "based on newly discovered evidence." (Doc. no. 1, p. 12). Respondent contends

4

that Petitioner's claims are barred by his appeal waiver, procedurally defaulted, or otherwise without merit. (See generally doc. no. 3).

## II. DISCUSSION

### A. No Need for Evidentiary Hearing

In regard to Petitioner's request for an evidentiary hearing, the Eleventh Circuit follows the general rule "that effective assistance claims will not be addressed on direct appeal from a criminal conviction because an evidentiary hearing, available in a section 2255 proceeding, is often required for development of an adequate record." Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). Nonetheless, this general rule does not require the Court to hold an evidentiary hearing every time an ineffective assistance of counsel claim is raised. Id. Stated another way:

> Notwithstanding this legislative mandate, it is well settled that a petitioner does not establish his right to a hearing by the simple expedient of filing a petition. A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.

Stephens v. United States, 14 F. Supp.2d 1322, 1334 (N.D. Ga. 1998) (citation omitted).

As described in detail below, the Court finds that Petitioner's claims are barred from review or otherwise affirmatively contradicted by the record. Thus, no evidentiary hearing is necessary in this case. Accordingly, Petitioner's request for an evidentiary hearing should be denied.[1]

---

[1] The Court is aware that Petitioner has also requested appointment of counsel in these proceedings. (See doc. no. 1, p. 12). However, there is no constitutional right to counsel in habeas proceedings. See, e.g., Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); see also Hooks v. Wainwright, 775 F.2d 1433, 1438 (11th Cir. 1985). Rather, the appointment of counsel is warranted only where "due process or the 'interests of justice'" so require. Hooks,

**B.      Effect of Waiver Contained in the Plea Agreement**

   **1.      Knowing and Voluntary Nature of Waiver**

It is well-settled that a waiver of appeal[2] provision is enforceable if the waiver is knowing and voluntary. United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Bushert, 997 F.2d 1343, 1350 (11th Cir. 1993). "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." Weaver, 275 F.3d at 1333.

Thus, if the government meets the burden in the instant case, claims (1), (2)(b)(ii), (2)(c), (2)(d), and (3),[3] which are described above, are barred by Petitioner's appeal waiver. See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (*per curiam*) (enforcing

---

775 F.2d at 1438 (citing 18 U.S.C. § 3006A). At this time, the Court does not find any circumstances exist that warrant the appointment of counsel. Petitioner has demonstrated the ability to adequately communicate with and present his arguments to the Court. Moreover, as noted above, no evidentiary hearing is required, and thus there is no need to appoint counsel for Petitioner under Rule 8(c) of the Rules Governing Section 2255 Proceedings. Accordingly, Petitioner's request for appointment of counsel should also be denied.

[2]By "appeal," the Court here refers to the right to "appeal or contest, directly or collaterally, [a] sentence." United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993). Moreover, case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings. Id. at 1345; see also Vaca-Ortiz v. United States, 320 F. Supp.2d 1362, 1365-67 (N.D. Ga. 2004).

[3]The Court also notes that Petitioner's claim that his sentence is unreasonable under 18 U.S.C. § 3553(a) was addressed by the Eleventh Circuit on appeal, and the appellate court found that "the district court did not impose an unreasonable sentence." Mendoza, 252 Fed. App'x at 268.

6

waiver provision where defendant was specifically questioned during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1146-47 (11th Cir. 1997).

Here, the plea agreement signed and verified by Petitioner fully set forth that, as a condition of his guilty plea, he was waiving any right to collateral attack of his sentence[4] or the knowing and voluntary nature of his guilty plea. See CR 106-009, doc. no. 39, pp. 5-6 ("The defendant . . . expressly waives any and all rights to collateral post-conviction attack of the sentence imposed or the voluntariness . . . of the guilty plea entered pursuant to this agreement."). Judge Bowen reviewed the waiver provisions at the Rule 11 colloquy, and Petitioner acknowledged that he understood and agreed with the terms of the plea agreement as explained by Judge Bowen. Rule 11 Tr., p. 55. Judge Bowen also explained the appeal waiver to Petitioner's co-defendant, Mr. Gopar, and Petitioner indicated that he heard Judge Bowen's explanation and understood that he was giving up the same rights as Mr. Gopar. Id. at 37-38, 55.

While Petitioner would have this Court ignore his responses to Judge Bowen's questions, "[s]olemn declarations in open court [at a guilty plea hearing] carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). In sum, the Court finds that

---

[4]The fact that Petitioner has attempted to challenge his sentence under the guise of an ineffective assistance of counsel claim does not change this result. See Williams v. United States, 396 F.3d 1340, 1342 (11th Cir. 2005) ("[A] valid sentence appeal-waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing." (citations omitted)).

7

the appeal waiver is valid, and thus claims (1), (2)(b)(ii), (2)(c), (2)(d), and (3) of Petitioner's § 2255 motion, as described above, are barred from review.

C.     **Remaining Claims Not Barred by Appeal Waiver**

Notwithstanding the above analysis, claims (2)(a), that counsel was ineffective for failing to provide an interpreter, and (2)(b)(i), that counsel was ineffective for failing to request a mental evaluation, inasmuch as it affected Petitioner's ability to understand the nature and consequences of his situation, are not barred from review because, under certain circumstances, ineffective assistance of counsel claims can survive a valid waiver. In particular, the Eleventh Circuit recognizes that "there may be a distinction between a § 2255 claim of ineffective assistance in entering or negotiating the plea versus a claim of ineffectiveness at sentencing or a claim challenging the validity of the plea or agreement." Williams v. United States, 396 F.3d 1340, 1342 n.2 (11th Cir. 2005); see also Vaca-Ortiz, 320 F.Supp.2d at 1365 ("[T]he court notes that a criminal defendant could not waive the right to bring a claim for ineffective assistance of counsel in which he alleges ineffectiveness at the time he was entering the plea or ineffectiveness related to advice he received regarding the waiver.").

Here, Petitioner's claim that counsel was ineffective for failing to provide an interpreter is not barred from review because this claim relates to Petitioner's ability to comprehend the nature of the guilty plea proceedings. Indeed, Petitioner states that he could not "communicate adequately" with his attorney without an interpreter and that the "language barrier" affected his "ability to understand the nature and consequences of his legal situation." (Doc. no. 1, pp. 5, 21). He therefore contends that an interpreter should have

8

been provided at all "pre-trial proceedings and [the] plea hearing." (Id. at 21-22). Petitioner's claim that counsel was ineffective for failing to request a mental health evaluation is also not barred from review, inasmuch as he contends that this alleged error also affected his ability to understand the nature and consequences of his situation. Specifically, Petitioner states that had counsel requested a mental health evaluation, he "would have been receiving the proper medical care during the pre-trial proceedings" and accordingly "the outcome of this case would have been completely different." (Doc. no. 4, p. 4). These allegations may fairly be construed to contend that Petitioner would not have pled guilty but for counsel's alleged error, and thus this claim is also not barred from review.

That said, ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1994). First, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In applying this test, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance[.]" Strickland, 466 U.S. at 689; see also Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing "that petitioner was not entitled to error-free representation"). "A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Second, Petitioner must establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. In the context of a guilty plea, the Court must

normally inquire as to whether counsel's performance affected the outcome of the plea process. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

In applying the Strickland components outlined above, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). For as the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations omitted).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion--though the presumption is not insurmountable--is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). As the Eleventh Circuit has succinctly stated, "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." Waters v. Thomas, 46 F.3d

10

1506, 1512 (11th Cir. 1995) (*en banc*). "[C]ases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Id. at 1511.

Because determining whether Petitioner suffered prejudice hinges upon the validity of the underlying claims, see Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990), the Court will review the merits of Petitioner's claims that counsel should have provided an interpreter and requested a mental health evaluation.

### 1. Failure to Provide an Interpreter

Here, the Court finds that counsel did not err in failing to provide an interpreter because the record establishes that Petitioner did not need one. Indeed, Petitioner demonstrated at the Rule 11 colloquy that he was able to understand and communicate in English. Specifically, Petitioner informed Judge Bowen at the hearing that although he was originally from Cuba, he had been living in the United States for 26 years and that he could understand English. Rule 11 Tr., pp. 6-8. Petitioner's attorney also informed Judge Bowen that Petitioner could understand him when they met and that in their meetings, Petitioner "seem[ed] competent in understanding what is going on." Id. at 11. Petitioner's wife, Mrs. Mendoza, who apparently speaks and understands English even better than her husband, also stated that Petitioner spoke English well enough for her to understand him. Id. at 6-7.

Notably, Petitioner informed the Court on two separate occasions that he wanted to conduct the hearing in English, despite the availability of an interpreter:

> Q: I understand that you wish to conduct this proceeding in English; is that correct?

11

. . . .

A:   Yes, sir.

. . . .

Q:   Mr. Pacheco, bring [Petitioner] back up to the podium. Now, . . . do you want to talk to me?

A:   Yes.

Q:   Do you want to talk to me in English or in Spanish?

A:   English.

Id. at 2-3, 53.

Furthermore, as noted above, Petitioner informed the Court that Mr. Gopar, who spoke limited English and needed a Spanish interpreter at the Rule 11 colloquy, had paid Petitioner $500.00 to be an interpreter for him. Id. at 54. Finally, as a general matter, the Court notes that Petitioner responded appropriately to Judge Bowen's questions throughout the hearing without assistance from the court-provided interpreter. For instance, when Judge Bowen asked Petitioner how old he was, Petitioner stated, "Forty-six." Id. at 5. When Judge Bowen asked Petitioner what kind of work he had done before he became disabled, Petitioner responded, "Construction work, cleaning offices, and I do work recapping tires for a company." Id. at 8. Notably, Petitioner never expressed that he was confused or needed the interpreter's assistance in answering Judge Bowen's questions.

This record demonstrates that Petitioner did not need an interpreter, and thus counsel did not err in failing to provide one. Even assuming *arguendo* that counsel should have provided Petitioner with an interpreter, it cannot be said that any prejudice inured to Petitioner as a result because one was made available at the time Petitioner entered his guilty

12

plea, and Petitioner chose not to take advantage of these services. Thus, Petitioner has failed to demonstrate that counsel erred in failing to provide an interpreter or that he suffered any prejudice as a result. Accordingly, this claim of ineffective assistance of counsel fails.

2.      **Failure to Request a Mental Health Evaluation**

Petitioner also contends that counsel should have requested a mental health evaluation because he was not receiving the proper medical care "during the pre-trial proceedings," thereby affecting his ability to understand his "legal situation." (Doc. no. 4, pp. 1, 4). The Court has construed Petitioner's alleged inability to understand his "legal situation" to include his decision to enter a guilty plea. In support of his claim, Petitioner states that he was electrocuted at a young age and suffers from schizophrenia, dementia, and a host of other psychological problems. (Doc. no. 1, pp. 20-21, 95). The records submitted with Petitioner's § 2255 motion confirms that he was in fact electrocuted as a child and is suffering from various psychological problems. (Id. at 28-32, 50).

That said, Petitioner has failed to show that his attorney's failure to request a mental health evaluation affected the outcome of the plea process. See Hill, 474 U.S. at 59. At sentencing, Petitioner's attorney informed the Court that Petitioner had in fact been receiving treatment for his schizophrenia since being incarcerated. The PSI prepared prior to Petitioner's sentencing further detailed his psychiatric treatment, specifically noting treatment for schizophrenia at a hospital in Atlanta prior to his incarceration,[5] as well as the medication prescribed to treat Petitioner's schizophrenia and other mental disorders since his

---

[5]While this treatment was unverified at the time the PSI was prepared (see PSI, ¶ 46), Petitioner has included with his § 2255 motion what appears to records of his mental health treatment in Atlanta. (See doc. no. 1, pp. 33-47).

13

incarceration. PSI, ¶¶ 46, 47. Thus, this record undermines Petitioner's claim that he was not receiving proper medical care when he entered his guilty plea.

It is also worth noting that after Judge Bowen had the opportunity to ask each of the defendants several questions about their background and other issues, he made the following observations:

> Well, I have no doubt as to competence of any of these defendants. Each is lucid in every respect that I can observe and determine. Each is attentive to the proceeding and is responsive to my questions. While each is somewhat nervous, which is predictable and understandable under the circumstances, I find that they are responsive to my questions and especially upon counsel's assurance, I find each one of these defendants . . . to be competent to enter a plea if that is his or her wish to do so.

Id. at 12. Judge Bowen's observations are further supported by the records of Petitioner's medical treatment since his sentencing. When Petitioner was placed at the Federal Correctional Institution in Ashland, Kentucky, a staff psychologist performed an "intake screening," which noted that "no mental status items were noteworthy" and that no mental disabilities were evident during the interview. (Doc. no. 1, pp. 91-92). Other records indicate that Petitioner did not report any major psychological problems, nor were any observed by staff, during his stay at the Ashland facility. (Id. at 84-90). Upon his transfer to the Federal Correctional Institution in Coleman, Florida, another intake screening was performed, and Petitioner's "psychological stability" was judged be "favorable," and the staff psychologist found that he did not require "immediate psychological services." (Id. at 81-82).

Thus, the Court concludes that counsel did not err in failing to request a mental health evaluation. Petitioner was receiving treatment for his psychological problems, and Judge Bowen's observations regarding Petitioner's competence are supported by Petitioner's own medical records. Accordingly, this claim of ineffective assistance of counsel also fails.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Petitioner's § 2255 motion be **DENIED** without an evidentiary hearing, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 18th day of September, 2009, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE